## LITTLE ROCK POLICE DEPARTMENT, ex rel. Lee A. MUNSON, Prosecuting Attorney v. ONE 1977 LINCOLN CONTINENTAL MARK V and Fred B. SANDS

78-302                                    580 S.W. 2d 451

Opinion delivered April 23, 1979
(Division I)
[as amended on Denial of Rehearing May 21, 1979.]

*Lee A. Munson,* Pros. Atty.; *John Wesley Hall, Jr.,* Deputy Pros. Atty; and *R. Jack Magruder, III,* Little Rock City Atty., for appellant.

*Jack Holt, Jr.,* and *Deborah Davies Cross,* for appellees.

GEORGE ROSE SMITH, Justice. At about 2:15 a.m. on December 10, 1977, the appellee Fred B. Sands, 22, a college student, drove his 1977 Lincoln Continental car to the SAE fraternity house in Little Rock. Several police officers, on the basis of an informer's tip, were waiting for Sands and the car. They conducted a warrantless search of the car and found 3.14 pounds of marihuana in the trunk. The Little Rock

Police Department, on the relation of the prosecuting attorney, then brought this action for a forfeiture of the car as a vehicle that had been used in the transportation of drugs. Ark. Stat. Ann. § 82-2629 (Supp. 1977). The trial judge dismissed the action, finding that the search of the car was illegal. The appellant seeks to sustain the search on two different grounds.

First, it is argued that the officers had probable cause to search the car. Officer Dawson testified that the confidential informer telephoned three times, at about 9:00 p.m., at about 10:00 p.m., and shortly before 2:15 a.m. The informer described Sands and the car, including its license number, and said that Sands was on his way to the SAE house with ten pounds of marihuana. Officer Dawson said that he had met the informer, but he did not know him well and had never worked with him on a case, though "the office" had. The informer's description of Sands and of the car proved to be correct. At the hearing counsel for the prosecution intimated that other witnesses from the narcotics division could be brought in to show that the informer had been used before, but no such proof was actually submitted.

The trial judge was right in holding that the State's testimony did not meet the recognized two-prong test for determining the existence of probable cause. That test was laid down in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), where the court held that an officer may obtain a search warrant on the basis of an informer's statements, but the magistrate must be supplied with (1) some underlying circumstances showing that the informer is reliable and (2) some underlying circumstances from which the informer concluded that the contraband was where he said it was.

Here neither requirement was satisfied. As to reliability, Officer Dawson had not previously acted upon information supplied by the informer, nor is it shown that the officer had any other basis for believing the informer to be reliable. The hearsay statement that "the office" had worked with him is not enough. Nor was the second requirement met. The informer merely said that Sands would be driving a certain car in delivering ten pounds of marihuana to the SAE house. He did not indicate in any way whatever how he reached that conclusion. Thus none of the underlying circumstances es-

sential to a finding of probable cause were shown to exist. In the absence of probable cause there was no basis for a search as being incidental to an arrest or as being within the automobile exception to the basic rule against warrantless searches.

The appellant argues, however, that the information given by the informer in describing Sands and the car was so precise and so detailed as to be self-verifying and therefore sufficient to meet both prongs of the *Aguilar* test. Reference is made to *Spinelli* v. *United States,* 393 U.S. 410 (1969), where the court, in discussing a pre-*Aguilar* case, said: "A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way." The court did not suggest, however, the second prong of the test could be satisfied in the same way.

In the case at bar we certainly cannot say that the details supplied by the informer were sufficient to dispense with the requirement that there be shown the underlying circumstances from which the informer concluded that marihuana would be in Sands' car. It is important to note that the details supplied by the informer related solely to innocuous facts; that is, the physical description of Sands and of his car. But in *Spinelli* the court pointed out that "it is especially important that the tip describe the accused's criminal activity." To the same effect is this statement from *Nance* v. *United States,* 377 A. 2d 384 (D.C. Cir., 1977):

> Arguably, then, if his tip was true in part, it may be inferred it was true in whole. We note, however, that courts and commentators have rejected the proposition that police investigation which substantiates only *innocuous* aspects of a tip will suffice to establish that the informant was telling the truth about the remaining critical part, i.e., the allegation of criminal conduct. [Citing authorities.]

We agree with that view and therefore hold that in the present case the informer's description of Sands and his car cannot dispense with the requirement that there also be shown

the underlying facts that led the informer to believe that the car would contain marihuana.

Second, it is argued that Sands consented to the search. The officers testified that Sands voluntarily opened the trunk of his car when they asked him to. Sands testified, however, with corroboration by the girl who was with him, that there were several uniformed policemen present, that they demanded that he open the trunk, that he was scared, and that he opened the trunk because the officers said they could open it anyway. The State must prove consent to a search by clear and positive testimony, with no duress or coercion, express or implied. *White* v. *State*, 261 Ark. 23-D, 545 S.W. 2d 641 (1977). We are unable to say that the trial judge was wrong in finding the evidence insufficient to establish voluntary consent.

Affirmed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.