Edward Gene KAISER *v.* STATE of Arkansas

88-89                                    752 S.W.2d 271

Supreme Court of Arkansas
Opinion delivered June 27, 1988
[Rehearing denied September 12, 1988.]

*Burris & Berry*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This is a property forfeiture case resulting from the arrest of the appellant, Edward Gene Kaiser, for possession of marijuana. Kaiser was found to have a small amount of marijuana on his person, and he pleaded guilty to a misdemeanor possession charge. Kaiser's car was stopped by Randolph County officers who had received information from Missouri officers that Kaiser would be travelling through Randolph County in a gray or silver 1979 Lincoln, license number KLN 436, and that he was carrying a pistol and $25,000 cash or 50 pounds of marijuana. Sheriff's officers found a pistol and $10,000 cash in the trunk of Kaiser's car, and those items were ordered forfeited pursuant to Ark. Code Ann. § 5-64-505 (1987). The sole question is whether the state presented evidence sufficient to support reasonable suspicion to stop Kaiser's car. The court of appeals, in *Kaiser v. State*, 24 Ark. App. 19, 746 S.W.2d 559 (1988), affirmed the forfeiture judgment by a tie vote, three-to-three. We reverse the court of appeals decision and remand to the trial court because the state presented no evidence supporting

the reliability of the tip received from the Missouri State Police.

Testimony of the Randolph County Sheriff made it clear that the sole basis for the stop of Kaiser's car was the information received from the Missouri State Police who had told the sheriff their information came from a reliable informant. In his response to the forfeiture petition Kaiser contended the stop, search, seizure and arrest were without a warrant, without probable cause and in violation of the Arkansas Constitution and the United States Constitution prohibitions against unreasonable searches and seizures. In a brief in support of the response, Kaiser clearly argued that:

> There is nothing in the record to indicate who the informant was, and there is nothing in the record to indicate how the informant obtained the information, when it was obtained, or how it was obtained. There is absolutely nothing in the record to indicate that the informant had any degree of reliability or had any means of obtaining knowledge, and . . . neither Sheriff Shultz nor the Arkansas State Police officers who were working on the matter, made any inquiries as to the reliability of the information furnished them by the Missouri officers.

Although it is stated in more general terms, Kaiser raises the same argument here.

The state concedes that the exclusionary rule applies in forfeiture litigation which is "quasi-criminal" in nature, citing *One 1958 Plymouth Sedan* v. *Pennsylvania*, 380 U.S. 693 (1965); *see also United States* v. *United States Currency $31,828*, 760 F.2d 228 (8th Cir. 1985). We have applied it in a case somewhat similar to this one. In *Little Rock Police Department* v. *One 1977 Lincoln Continental Mark V*, 265 Ark. 512, 580 S.W.2d 451 (1979), we affirmed a trial court's refusal to order forfeiture of a car found to contain 3.14 pounds of marijuana. We held there was not sufficient proof of the informant's reliability.

The Randolph County Sheriff did not act improperly in stopping Kaiser's car on the basis of the information from the Missouri State Police. That, however, does not end the inquiry into the propriety of the stop. If the Missouri officers had not developed a reasonable suspicion of Kaiser based on the reliabil-

ity of the informant, the seizures resulting from the stop could not stand and neither can the forfeitures.

In *United States* v. *Hensley*, 469 U.S. 221 (1985), the issue was whether police could stop and briefly detain a person described on a "wanted flyer" issued by another police department, and whether evidence obtained as the result of such a stop was admissible. The court noted its prior holdings that police could stop a moving vehicle upon reasonable suspicion of ongoing criminal activity. Hensley was being sought as a suspect in a completed armed robbery. The first question addressed was whether the kind of investigative stop authorized by *Terry* v. *Ohio*, 392 U.S. 1 (1968), would be permissible in the case of suspicion of an offense which was not ongoing. The court concluded that, "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." 469 U.S. at 229.

The second issue addressed by the Supreme Court in the *Hensley* case is like the one before us now. Officers of St. Bernard, Ohio, had issued the flyer in question. It was relied on by officers in Covington, Kentucky, to stop the defendant. At the trial an officer from St. Bernard testified extensively about his interview with the informant upon whose information the flyer was based. The trial court concluded that "the wealth of detail concerning the robbery revealed by the informant, coupled with her admission of tangential participation in the robbery, established that the informant was sufficiently reliable and credible." The Supreme Court concluded that the information carried enough indicia of reliability to justify an investigatory stop, 469 U.S. at 234, citing *Adams* v. *Williams*, 407 U.S. 143, 147 (1972).

The opinion in the *Hensley* case was written for a unanimous Supreme Court by Justice O'Connor. In the course of reaching the conclusion that the information possessed by the St. Bernard police was sufficient to justify the stop by the Covington officers, the opinion states:

> We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an of-

fense, then reliance on that flyer or bulletin justifies a stop to check identification . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information . . . . If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit . . . . It is the objective reading of the flyer or bulletin that determines whether other police officers can defensively act in reliance on it. . . . Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, . . . and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department. [Citations omitted; emphasis in original; 469 U.S. at 232-233.]

The Supreme Court seems to conclude that the intrusion which the Fourth Amendment protects against may occur, but then it may not, absent reasonable suspicion, bear fruit. Justice O'Connor's opinion recognizes this anomaly but concludes that the course chosen is the practical one. To exclude altogether evidence obtained after a stop based on second-hand police information would undermine the advantages of modern police communications.

The Supreme Court's opinion makes it clear that the failure of the issuing police agency to have reasonable suspicion to stop and search a vehicle cannot be immunized from a Fourth Amendment objection by passing the information on to another police officer or department which then acts upon it. In this case, the informant may well have been a reliable one, and the Missouri State Police may well have had a reasonable suspicion of Kaiser. We cannot know that, however, as the record is devoid of testimony supporting that conclusion.

Reversed and remanded for orders consistent with this opinion.