**UNITED STATES of America**

v.

**Roynail REESE.**

**No. CR 00–71–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 21, 2000.

Christine A. Freeman, Federal Defender, Middle District of Alabama, Montgomery, AL, for Defendant.

Stephen P. Feaga, William H. McAbee, IL, U.S. Atty's Office, Montgomery, AL, for U.S.

ORDER

MYRON H. THOMPSON, District Judge.

This criminal case presents an issue of first impression: when, within the bounds

of the fourth amendment's prohibition on unreasonable searches and seizures, can the police stop a person in order to determine whether he is an individual for whom they have an outstanding arrest warrant? For the reasons that follow, the court will apply a slightly modified version of the "reasonable suspicion" standard set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and, based on this standard, concludes that the brief detention of defendant Roynail Reese for the purpose of determining his identity was reasonable, with the result that the fruits of the detention may lawfully be entered into evidence against him.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of April 11, 2000, the Montgomery Police Department (MPD) received a call from an informant who identified herself as the girlfriend of Herbert Reeves, for whom the MPD had an outstanding theft-of-property arrest warrant. This informant reported that Reeves was currently at his mother's home, for which she provided the address. Police officers were dispatched to that location. When the police officers were within a block of Reeves's mother's home, an unknown individual in a car approached the police car and told the officers that the man they were looking for was in a brown Lincoln Towncar. The anonymous informant pointed to the car she had identified, which was moving away and approaching a stop sign less than a block ahead of them. The officers asked the informant whether she was referring to Herbert Reeves, and she responded in the affirmative.

The police officers then followed the Lincoln Towncar that the informant had identified. They trailed the car for several blocks, and, though the driver did not commit any traffic violations, they turned on their blue lights to pull the car over. The driver stopped his car within half a block, and he immediately got out of the car, stuffed something in his waistband, and began to run. The officers pursued him on foot and saw him throw away a plastic bag that was later retrieved and found to contain cocaine. The police officers ultimately apprehended the individual and arrested him. As it turned out, he was not Herbert Reeves, the man whom the informants had identified and whom the police officers thought they were pursuing, but rather defendant Roynail Reese. Nevertheless, the defendant was arrested and charged with cocaine possession.

The defendant, who has entered a conditional guilty plea pursuant to Fed. R.Crim.P. 11(a)(2), filed a motion to suppress all evidence seized from him at the time of his arrest, as well as any statements he made to the police thereafter, claiming that he was subjected to a seizure in violation of the fourth amendment to the United States Constitution, and that the evidence therefore constituted fruits of an unlawful arrest.[1] The magistrate judge, after holding a hearing, filed a recommendation that the motion be denied, and the defendant filed objections to the recommendation. For the reasons that follow, the court agrees with the magistrate judge that the suppression motion should be denied.

## II. ANALYSIS

It is well-established that a police stop of a vehicle, even for a brief period of time, constitutes a seizure within the meaning of the fourth amendment, and therefore is permissible under the Constitution only if it is "reasonable." *See Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Michigan v. Sitz*, 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990); *Delaware v. Prouse*, 440 U.S.

1. The defendant has, pursuant to Rule 11(a)(2), reserved the right to appeal from an adverse determination of his suppression motion, and, if he prevails on appeal, to withdraw his guilty plea.

648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). In the context of vehicle stops, police officers typically meet the fourth amendment's reasonableness requirement in one of three ways. First, it is reasonable for a police officer to stop a vehicle if the officer has probable cause to believe that the driver has violated the law, which may include a traffic violation. *See id.; United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir.1998). Second, police officers may stop cars indiscriminately without any particularized suspicion of wrongdoing if the invasion of privacy and inconvenience to the drivers is outweighed by a special countervailing interest in public safety, as when the police set up roadblocks to test all drivers for driving under the influence of alcohol or drugs. *See Sitz*, 496 U.S. at 452, 110 S.Ct. at 2486; *Merrett v. Moore*, 58 F.3d 1547, 1550 (11th Cir.1995). Finally, a brief detention of a vehicle is reasonable within the meaning of the fourth amendment where it is conducted "in order to investigate a reasonable suspicion that such persons are involved in criminal activity." *United States v. Mikell*, 102 F.3d 470 (11th Cir.1996).

The first scenario is inapplicable because, by the police officers' own admission, the defendant did not commit any traffic violations while they were following him. Nor does the roadblock model fit the facts of this case, because there was no countervailing public interest beyond pure law enforcement at stake, and the police targeted the defendant specifically rather than stopping all motorists at that location.

It might appear at first blush that the third model, where a police officer stops an individual briefly to investigate a reasonable suspicion of illegal activity, does not fit either because there is no evidence, based on the arresting officers' personal knowledge, that would support the suspicion that the defendant had moments before engaged in any criminal activity. However, on full examination, the court concludes that this third model does apply.

The "reasonable suspicion" framework originated in the case of *Terry v. Ohio*, where the Supreme Court held that it was reasonable for a police officer to stop and conduct a brief pat-down of an individual who was acting suspiciously, lingering outside a business as if he were casing it out for a robbery. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court gauged the reasonableness of the detention by examining "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20, 88 S.Ct. at 1879. The Court ultimately determined that the detention was reasonable so long as the defendant's behavior gave rise to a "reasonable suspicion" of criminal conduct. *Id.* at 30, 88 S.Ct. at 1884–1885. The "reasonable suspicion" must be more than an "inchoate and unparticularized suspicion or hunch," *id.* at 27, 88 S.Ct. at 1883, and "[w]hile 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop," *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 675–676, 145 L.Ed.2d 570 (2000), "based on common-sense judgments and inferences about human behavior," *id.* at ——, 120 S.Ct. at 676.

*Terry* is similar to the instant case in that, in both cases, the police stopped the defendant based on individualized suspicion arising from facts about that person alone, and, in both cases, the police officer made the stop for a limited purpose, the fulfillment of which required only a brief detention, and thus a minimal invasion of the individual's privacy. The two cases also differ in a significant way, however. While the officer in *Terry* stopped the defendant because of his personal suspicion about Terry's criminal *activity,* the officers in this case had personal suspicion only about the defendant's criminal *identi-*

ty. Indeed, there was no indication in the circumstances surrounding the defendant's arrest that could have led the police to suspect that the defendant had recently *done* anything illegal at all. Rather than suspecting him of engaging in any criminal behavior, the police suspected the defendant only of being Herbert Reeves, a person for whom they had an outstanding arrest warrant. Thus, the precise standard set forth in *Terry* —the standard for situations when the police detain an individual briefly in order to investigate suspicions of unlawful behavior—seems inapplicable here. However, a further parsing of *Terry* shows that it is applicable.

Courts have summarized *Terry* to provide that "law enforcement officers may detain a person briefly for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir.2000). Thus, there must be reasonable suspicion (1) of criminal activity in which (2) the person being sought has engaged or is about to engage. This case presents the interesting scenario where half the *Terry* picture is undisputed and presented: the outstanding warrant, which the parties do not dispute was based on probable cause, provided more than the needed reasonable suspicion of criminal activity. *See Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972) ("In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person."). The remaining question is whether there was reasonable suspicion that the person being sought was the subject of the warrant; for, if he was, then the *Terry* picture would be complete—that of a person for whom there was reasonable suspicion that he had engaged in criminal activity. *Cf. id.* at 146, 92 S.Ct. at 1923 ("A brief stop of a suspi-

cious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.") So, *Terry* is fully applicable here: the officers had reasonable suspicion of criminal conduct; the question is, Did they have a reasonable basis to suspect that the man driving the Lincoln Towncar was the subject of the warrant?

■ Considering all of the above factors, the court has fashioned the following standard to fit the defendant's case: that a police officer can, within the bounds of the fourth amendment, briefly detain an individual in order to determine whether he is a person for whom they have an outstanding arrest warrant, so long as the stop is based on a reasonable, articulable suspicion that the person is the individual whom the police are seeking. As in the *Terry* line of cases, the court's assessment of the reasonableness of the officers' suspicion should be informed by commonsense judgments and inferences about human behavior based on an objective consideration of the totality of the circumstances as they were presented to the police before they made the stop. In this case, then, the police were justified in stopping the defendant, if, based on all the facts presented to them, they reasonably suspected that he was Herbert Reeves.

In order to determine what kinds of circumstances give rise to a reasonable suspicion, the court looks to the cases following *Terry*. In particular, the court looks to cases that have addressed the issue of what kind of information an anonymous informant must give the police in order for the tip to give rise to a reasonable suspicion, and to justify a *Terry* stop. The Supreme Court first addressed this issue in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), in

which police officers stopped the defendant based on an anonymous tip that a woman possessing cocaine was at a particular location, and that she would leave that apartment at a particular time in a particular type of car and transport the cocaine to a particular motel. The Court reasoned that, although "an anonymous tip seldom demonstrates the informant's basis of knowledge or veracity," *id.* at 329, 110 S.Ct. at 2415, if suitably corroborated, the tip from an unknown informant can exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* at 327, 110 S.Ct. at 2414. In *White,* the Court noted that the tipster not only described the suspect and identified her present whereabouts, but also accurately predicted her future behavior. *See id.* at 332 110 S.Ct. at 2417. This additional information, the Court reasoned, indicated the informant's familiarity with the defendant's illegal affairs, and lent credibility to her tip. *See id.* After corroborating all of the informant's predictions, the police had reasonable suspicion to make the stop, and were therefore within the bounds of the fourth amendment in doing so. *See id.*

Since *White* does not establish a bright-line rule, the lower courts have grappled with the issue of just how much information an anonymous informant must provide to the police in order to give rise to the reasonable suspicion required to make a *Terry* stop. *See, e.g., United States v. DeBerry,* 76 F.3d 884 (7th Cir.1996); *United States v. Clipper,* 973 F.2d 944 (D.C.Cir. 1992); *United States v. Thomas,* 863 F.2d 622 (9th Cir.1988). In particular, the courts addressed whether an anonymous tip that a particular individual at a specified location was carrying a firearm was sufficient to justify a stop and frisk. *See id.*

The Eleventh Circuit addressed this issue in *United States v. Gibson,* 64 F.3d 617 (11th Cir.1995), in which police officers stopped and frisked the defendant based solely on an anonymous tip that a man fitting his description and located at a particular bar were armed. *Id.* at 619. The Eleventh Circuit addressed the Supreme Court holding in *White,* stating that "*White* does not prevent law enforcement officers from relying and acting on anonymous tips when the information to be corroborated does not refer to future actions but instead details present circumstances." *Id.* at 623. In addition, the appellate court stated that the governmental interest in stopping the defendant was heightened by the allegation that a firearm was involved, thereby imposing a serious safety risk to both the police officers and the public. *See id.* ("More importantly, the anonymous tip concerned the presence of two potentially armed individuals in a public establishment.") The Eleventh Circuit therefore held that the stop was reasonable and that Gibson's fourth-amendment rights were not violated. *Id.* at 624.

■ Recently, the Supreme Court took note of the circuit split over cases such as *Gibson,* and took up the very issue and reached the opposite conclusion in a case called *Florida v. J.L,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The facts of *J.L.* are identical to those in *Gibson* in every relevant respect: the police received an anonymous tip that an African–American male dressed in a particular way and located at a particular place was carrying a concealed weapon, and the police thereupon went to that location, corroborated the tipster's information through observation of the suspect, and stopped and frisked him. *Id.* at ——, 120 S.Ct. at 1377. The Court concluded that an anonymous tip that does not predict the suspect's future activities as in *White,* but rather only provides information describing his physical characteristics and present location, does not give rise to a reasonable suspicion of illegal activity, and thus cannot justify a *Terry* stop:

"The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line."

*Id.* at ——, 120 S.Ct. at 1379. Without any additional information that can lend credence to an unknown informant's tip, a bald identification of a suspect's appearance and location does not give the police reasonable suspicion to stop him. *Id.*

■ If the facts of this case were comparable of those in *Gibson* and *J.L.*—that is, if the only information available to the police were an anonymous informant's tip that Herbert Reeves was in a brown Lincoln Towncar located at a particular corner—then the court would have conclude that they lacked reasonable suspicion to believe that the man they stopped was the individual for whom they had an outstanding arrest warrant. If such were the case, the court would in turn be required to

conclude that the detention was unreasonable. The court finds, however, that the totality of the circumstances provided the police officers with a good deal more information, and that, viewed as a whole, the information did lead them reasonably to suspect that the defendant was Herbert Reeves.

At the time the anonymous informant approached the police officers' car, the police already had a good deal of information about Herbert Reeves's whereabouts. They knew the location of his mother's house, and that they were then within a block from it. They also knew that a woman identifying herself as Reeves's girlfriend (whose reliability the parties do not challenge) had recently informed the police that Reeves was then at his mother's home. Finally, the anonymous informant pointed out a vehicle that was then located less than two blocks from Reeves's mother's home, and was traveling in a direction away from it.

The information provided by two informants was logically consistent with, and supported, the belief that Reeves had left his mother's home within the last few minutes and was driving away from it.[2] The

---

2. In *J.L.*, Justice Kennedy, concurring, wrote: "If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip. An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring."

*J.L.*, 529 U.S. at ——, 120 S.Ct. at 1381; *see also United States v. Sierra–Hernandez*, 581 F.2d 760, 763 (9th Cir.1978) (Kennedy, J.) ("Moreover, although the informant did not identify himself by name, he would have been available for further questioning if the agent had judged the procedure appropriate. Unlike a person who makes an anonymous telephone call, this informant confronted the agent directly. By thus presenting himself to the agent and doing so while driving a car from which his identity might easily be

traced, the informant was in a position to be held accountable for his intervention. The reliability of the information was thus increased.").

Here, the informant who approached the officers' car did so *face to face*, and thereby placed her anonymity at risk of discovery from questioning by the officers on the scene or later investigatory identification, a factor which also weighs in favor of the informant's reliability.

And, "there are reasons to support the [officers'] failure to converse further with the informant, to ask for h[er] name.... The suspect was in a vehicle moving away from the [officers] when the tip came, and [the court] can infer from the record that it was reasonable for the [officers] to use [their] time ... to set off in pursuit, rather than to question the informant. There is nothing in the record which should have caused the [the officers] to doubt the reliability or good faith of the informant in tendering information." *Sierra–Hernandez*, 581 F.2d at 763.

court therefore concludes that, considering "the specific reasonable inferences which [they were] entitled to draw from the facts in light of [their] experience," *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, the police officers could reasonably suspect that the person driving away in the brown Lincoln Towncar identified by the second informant was Herbert Reeves. "[T]he record evidences the tempered act of [ ] policem[e]n who in the course of an investigation had to make a quick decision." *Id.* at 28, 88 S.Ct. at 1883. Indeed, "[i]t would have been poor police work ... for [the] officer[s] ... to have failed to investigate ... further." *Id.* at 23, 88 S.Ct. at 1881.

Because the officers' suspicion that the defendant was a person for whom they had an outstanding arrest warrant was reasonable, they were justified in stopping him briefly for the limited purpose of verifying his identity. The motion to suppress evidence flowing from the defendant's arrest will therefore be denied.

Accordingly, it is ORDERED as follows:

(1) The objections, filed by defendant Roynail Reese on July 12, 2000, to the recommendation of the magistrate judge, entered July 6, 2000, are overruled.

(2) The recommendation of the magistrate judge, entered July 6, 2000, is adopted.

(3) The motion to suppress, filed by defendant Reese on June 16, 2000, is denied.