**STATE of Missouri, Respondent,**

v.

**Kenneth Leroy JOHNSON, Appellant.**

No. WD 70816.

Missouri Court of Appeals, Western District.

April 13, 2010.

Application for Transfer Denied Aug. 31, 2010.

Nancy A. McKerrow, Assistant State Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Mary H. Moore, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division III: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

The State charged Appellant Kenneth L. Johnson with possession of a controlled substance. § 195.202, RSMo 2000. Johnson was convicted by a jury in the Circuit Court of Boone County, the Honorable Gary Oxenhandler presiding. Johnson preserved his right to appeal the circuit court's adverse ruling on his pre-trial motion to suppress evidence, which, if it had been granted, would have resulted in an acquittal. We affirm.

## Facts and Procedural Background[1]

On July 3, 2007, Officer Jonathan Logan and Officer Lance Bolinger were patrolling Douglas Park in Columbia, Missouri, during a special event. Logan was off-duty but was wearing his police uniform. Logan observed Johnson riding his bicycle. Logan testified that he had knowledge that there was an outstanding warrant for Johnson's arrest. Logan testified that he could not remember where he had obtained the information, but he remembered hearing about the outstanding warrant within the two weeks prior to his arrest of Johnson. Logan testified that he normally learned of warrant information at shift meetings, from other officers, or from the department's memorandum system. Logan was familiar with Johnson because he had arrested him in the past. When Logan heard about the outstanding warrant, Logan placed Johnson's name on a personal list that he maintained. Logan periodically checked his personal list of outstanding warrants to verify that they were still active; however, Logan did not check his list on July 3, 2007.

Logan stopped Johnson and said, "Kenny, I think you have a warrant." Logan and Bolinger stepped in front of Johnson's bicycle, blocking his progress. Logan asked for Johnson's full name and date of birth so that he could check the police records to verify that the warrant for Johnson's arrest was still active. Logan testified that, had he not briefly detained Johnson, he could not have confirmed the active status of the warrant because "there's thousands of Kenny Johnsons.... You need a date of birth and a Social Security number to help confirm that."

Both Logan and Bolinger testified that, while they were verifying that the warrant

---

1. We view the evidence in the light most favorable to the circuit court's ruling on the motion to suppress. *State v. Jackson,* 186 S.W.3d 873, 879 (Mo.App. W.D.2006).

was still active, Johnson was not free to leave.

Through contacting the joint communications office of the police department, Bolinger verified that a warrant for Johnson's arrest was active. The warrant was issued by Monroe County on a misdemeanor charge of driving while intoxicated.

The police officers then handcuffed and searched Johnson. The search revealed two marijuana cigarettes. Bolinger transported Johnson to the police station. The police conducted an inventory search of Johnson. Turning out Johnson's pockets, the police found crack cocaine. The crack cocaine was not discovered during the initial search because it was pushed into the seam and not discoverable without turning the pocket inside out. The crack cocaine is the controlled substance at issue in this appeal.

Johnson filed a motion to suppress the evidence of the crack cocaine on the ground that its discovery resulted from an unlawful seizure of his person. Johnson argued that the police violated his rights under the Fourth Amendment to the United States Constitution when they initially stopped him. On July 8, 2008, the circuit court denied the motion to suppress.

Johnson went to trial. At trial, Johnson maintained a continuing objection to the admission of any evidence of the crack cocaine or marijuana. The trial court overruled the motion and denied Johnson's motion for an acquittal. The jury found Johnson guilty of possession of a controlled substance. The circuit court sentenced Johnson as a prior and persistent offender to seven years in prison. The court denied Johnson's motion for acquittal notwithstanding the verdict, or, in the alternative, for a new trial.

This direct appeal follows. In his only point on appeal, Johnson argues that the circuit court erred in denying his motion to suppress the evidence of the crack cocaine.

### Standard of Review

Once the accused files a motion to suppress evidence, the State has the burden to show that the evidence is admissible. *State v. Hernandez,* 954 S.W.2d 639, 642 (Mo.App. W.D.1997). In reviewing the circuit court's denial of a motion to suppress evidence, our inquiry is limited to whether the decision is supported by substantial evidence. *Jackson,* 186 S.W.3d at 879. We consider the facts in the light most favorable to the ruling, and we disregard any contrary evidence and/or adverse inferences. *Id.* We defer to the circuit court for factual findings and credibility determinations, but we review questions of law *de novo. Id.* "An appellate court will not reverse a trial court's ruling on a motion to suppress unless the decision is clearly erroneous and leaves the appellate court with a definite and firm impression a mistake has been made." *Id.*

### Legal Analysis

The question presented by this appeal is whether, at the time he stopped Johnson, Logan had reasonable suspicion that there was an active warrant for Johnson's arrest.[2]

---

**2.** The State also argues that the "escape rule" should apply here and that we should not reach the merits of Johnson's appeal because of it. Under the escape rule, an appellate court can, in its discretion, dismiss an appeal if the delay caused by an accused's escape adversely impacted the criminal justice system. *State v. Janson,* 964 S.W.2d 552, 554 (Mo.App. S.D.1998). Here, Johnson failed to appear for his January 26, 2009 sentencing hearing, purportedly because he did not know that his January 14, 2009 hearing had been continued to that date. After Johnson had been taken back into custody in February, the circuit court saw fit to release him on bond, and Johnson then appeared at the next sched-

## I. The Fourth Amendment

■ Johnson alleges that by stopping and subsequently searching him, the police violated his rights under the Fourth Amendment of the United States Constitution and article I, section 15 of the Missouri Constitution. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Fourteenth Amendment to the United States Constitution rendered the Fourth Amendment applicable to state action. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). While the Missouri Constitution may extend protections farther than those provided by the United States Constitution, such is not the case with respect to searches and seizures, for article I, section 15 of the Missouri Constitution is parallel to and co-extensive with the Fourth Amendment. *State v. Rushing*, 935 S.W.2d 30, 34 (Mo. banc 1996).

## II. The *Terry* Stop exception to the Fourth Amendment's warrant requirement

■ Subject to only a few specific and well-delineated exceptions, warrantless searches and seizures are deemed per se unreasonable. *State v. Martin*, 79 S.W.3d 912, 916 (Mo.App. E.D.2002). The exception at issue here was first acknowledged by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There, the Court established the "stop and frisk" or "*Terry* stop" exception to the Fourth Amendment's warrant requirement. *Id.*

■ Under the *Terry* stop exception, a police officer acts reasonably, and therefore does not violate the Fourth Amendment, when he or she "briefly stops or detains an individual ... to investigate when the officer has a reasonable suspicion supported by specific and articulable facts that criminal activity is afoot." *Martin*, 79 S.W.3d at 916 (citing *State v. Slavin*, 944 S.W.2d 314, 317 (Mo.App. W.D.1997)); *see also State v. Dixon*, 218 S.W.3d 14, 22 (Mo.App. W.D.2007) ("[T]he Fourth Amendment requires that all warrantless 'seizures' of an individual be founded upon at least reasonable suspicion that the individual seized is engaged in wrongdoing."). The suspected criminal activity need not be ongoing—if a police officer has reasonable suspicion that a crime has occurred in the past, he or she may briefly stop the suspected individual for investigative purposes. *United States v. Hensley*, 469 U.S. 221, 227, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

■ The standard for "reasonable suspicion" is "whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate." *State v. Lanear*, 805 S.W.2d 713, 716 (Mo.App. W.D.1991). This standard requires less certainty than that sufficient to establish "probable cause"; however, a justified *Terry* stop must still be supported by " 'some minimal level of objective justi-

uled hearing on March 16, 2009. Under these circumstances, we do not think that the criminal justice system was so burdened by Johnson's conduct that his right to appeal should be extinguished. *See id.* (holding that the escape rule did not apply when the accused's sentencing hearing had to be rescheduled due to his failure to appear and when no one was injured during the "escape"). Accordingly, we reach the merits.

fication.'" *Id.* (quoting *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). In determining whether the standard for "reasonable suspicion" has been met, the court must evaluate all of the relevant circumstances and must consider them together, not in isolation. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In evaluating whether the "reasonable suspicion" standard has been met, we are mindful that police officers are permitted to make use of all of the information available to them, and they may make inferences from that information that would not be made by members of the public, who lack access to the officer's knowledge, information, and training. *Id.*

Assuming that reasonable suspicion exists at the outset of a *Terry* stop, the scope of the search and/or seizure that follow must be " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry,* 392 U.S. at 19, 88 S.Ct. 1868 (quoting *Warden v. Hayden,* 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)).

### III. The *Terry* stop exception as applied to Logan's stop of Johnson

#### 1. A seizure occurred before Logan confirmed that the warrant for Johnson's arrest was active.

 The State argues that no "seizure" of Johnson's person occurred before the officers confirmed that the warrant for Johnson's arrest was active. According to the State, the active status of the warrant gave Logan probable cause to arrest John-

son, and, prior to receiving confirmation that the warrant was active, the police officers had neither searched Johnson nor seized his person. We disagree.

The State is, of course, correct that, once the officers had confirmed the active status of the warrant for Johnson's arrest, the arrest of Johnson was constitutionally permissible. *State v. Stacy,* 121 S.W.3d 328, 333 (Mo.App. W.D.2003). However, as explained below, the police officers "seized" Johnson's person *before* they confirmed that the warrant was active, and therefore we must decide whether they had reasonable suspicion to do so.[3] *See Dixon,* 218 S.W.3d at 22 (holding that seizure of defendant's person in advance of determining that an outstanding warrant existed needed to have been supported by, at a minimum, reasonable suspicion); *State v. Sund,* 215 S.W.3d 719, 725 (Mo. banc 2007) (holding that evidence must be suppressed when it was obtained after a stop which, at its inception, violated the Fourth Amendment).

 "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "Police officers may request identification and examine that identification, and those actions, by themselves, are permissible and do not constitute a seizure." *Stacy,* 121 S.W.3d at 333 (citing *Delgado,* 466 U.S. at 216, 104 S.Ct. 1758). However, "whenever a police officer accosts an individual and *restrains his freedom to walk away,* he has 'seized' that person." *Terry,* 392 U.S. at 16, 88 S.Ct. 1868 (emphasis added). A "seizure" of the defendant's person occurs when a reasonable person would not feel

---

**3.** The State also argues that, due to Logan's previous knowledge that a warrant had been issued for Johnson's arrest, Logan had probable cause to arrest Johnson before he confirmed the status of the warrant. Since we conclude below that Logan had reasonable suspicion to stop Johnson, we need not decide whether Logan's previous knowledge would satisfy the higher standard of probable cause.

free to disregard the police and go about his or her business. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382 (citing *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). Once a police officer has stopped an individual and asked for identification, whether the individual has been "seized" is a question of whether a reasonable person, given the totality of the circumstances, would feel free to walk away. *Dixon,* 218 S.W.3d at 20–21 (holding that, when the police took the defendant's driver's license, told the defendant to remain in his truck, and took the driver's license back to the patrol car, the defendant's person had been "seized" for the purposes of the Fourth Amendment).

Here, the record is undisputed that, before they confirmed the active status of Johnson's warrant, Logan and Bolinger restrained Johnson's freedom to walk way, *Terry,* 392 U.S. at 16, 88 S.Ct. 1868, so that a reasonable person would not have felt free to disregard the police and go about his or her business. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382. Logan testified that he called out to Johnson, saying "Kenny, I think you have a warrant." Then, both Logan and Bolinger stepped in front of Johnson's bicycle, impeding his progress. The officers both testified that, at this point (before they confirmed the warrant), Johnson was not free to leave. Given that the officers stopped Johnson, informed him there might be a warrant for his arrest, physically stood in his way so as to impede his progress, and testified that, at that point, he was not free to leave, we hold that the officers' initial stop of Johnson constituted a "seizure" of his person. *Id.*

## 2. Logan had reasonable suspicion that a warrant for Johnson's arrest was active.

▮ Given that a seizure occurred, the police were required to have had, at a minimum, reasonable suspicion, supported by articulable facts, that criminal activity was afoot. *Terry,* 392 U.S. at 30, 88 S.Ct. 1868; *Martin,* 79 S.W.3d at 916. They did.

▮ "[P]olice officers can, within the bounds of the fourth amendment, briefly detain an individual in order to determine whether he is a person for whom they have an outstanding arrest warrant, so long as the stop is based on a reasonable, articulable suspicion...." *United States v. Reese,* 108 F.Supp.2d 1338, 1341 (M.D.Ala.2000). "Armed with the knowledge a warrant recently had been issued, it is reasonable for the officer briefly to detain an individual in order to determine the status of the warrant." *People v. Conway,* 222 Cal.App.3d 806, 814, 271 Cal.Rptr. 832 (Cal.Ct.App.1990).

Here, Logan had reasonable suspicion, based on articulable facts, that a warrant had recently been issued for Johnson's arrest. Logan testified that he had learned of Johnson's warrant within the previous two weeks. Although he could not remember precisely where he had learned of that information, he testified that it was either from a shift meeting, the department's "memo system," or from other officers. Police officers are entitled to rely on information from official channels, like fellow officers, police memoranda, and shift meeting directives, provided that the source of the information was itself based on probable cause or reasonable suspicion. *Hensley,* 469 U.S. at 231, 105 S.Ct. 675 (holding that an investigative stop in reliance on another police department's wanted flier, which was issued based on articulable facts supporting reasonable suspicion, was constitutionally reasonable); *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992) (holding that,

because there was *no* evidence that the dispatch relied upon by the officer was supported by reasonable suspicion, the stop of the defendant was invalid).[4] Furthermore, Logan was familiar with Johnson from past arrests, and this familiarity had prompted him to place Johnson's name on a personal list that he maintained of persons for whom warrants had been issued. Though Logan had not checked the list to ensure that it was current on the day he stopped Johnson, he testified that he checked the list regularly.

Given the temporal proximity of Logan's receipt of reliable information, Logan's familiarity with Johnson from previous arrests, and Logan's placement of Johnson's name on a list of active warrants that he checked regularly, we hold that Logan had at least reasonable suspicion, based on articulable facts, that there was an active warrant for Johnson's arrest.

### 3. Logan's stop of Johnson was no more intrusive than the circumstances required.

 Since we have determined that the seizure of Johnson's person was justified at its inception, we must now decide

"whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. 1868. It was.

 "[W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." *Hensley*, 469 U.S. at 229, 105 S.Ct. 675. "The governmental interest in apprehending individuals with outstanding arrest warrants outweighs the minimal intrusion on the liberty of an individual occasioned by a brief detention to determine the status of the warrant." *Conway*, 222 Cal.App.3d at 814–15, 271 Cal.Rptr. 832.

Here, Logan and Bolinger detained Johnson only briefly while they verified the status of his warrant. Logan testified that he did not verify the status of the warrant before detaining Johnson because it would have been impossible, given the common name "Kenny Johnson," to have

---

4. No true *Hensley* or *Franklin* problem is presented by the facts of this case. Those cases stand for the proposition that " 'the failure of the issuing police agency to have reasonable suspicion to stop ... cannot be immunized from a Fourth Amendment objection by passing the information on to another police officer [who] then acts upon it.' " *Franklin*, 841 S.W.2d at 642 n. 1 (quoting *Kaiser v. State*, 296 Ark. 125, 752 S.W.2d 271, 274 (1988)). Therefore, if one police department issues a flier or a radio bulletin based on information from a confidential informant or based on other suspicions, the State will have the burden to come forward with evidence at the suppression hearing that the information upon which the first agency relied was supported by reasonable suspicion or probable cause. *See id.* However, here, the underlying information was a warrant issued by a neutral magistrate, *cf. id.* at 643 n. 2 (distin-

guishing the facts in *Franklin* from those at issue in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), where the underlying information relied upon by the officer was a warrant issued by a neutral magistrate), and, at the suppression hearing, Johnson did not dispute that his arrest warrant was based on probable cause. Given that the probable cause supporting the underlying information was not at issue here, Logan was entitled to rely on it, *Hensley*, 469 U.S. at 232–33, 105 S.Ct. 675, assuming, of course, that he in fact had prior knowledge of the arrest warrant. By denying the motion to suppress, the circuit court implicitly found that Logan did, in fact, possess prior knowledge of the warrant, and, as noted above, we defer to the trial court on factual and credibility issues such as this. *Jackson*, 186 S.W.3d at 879.

determined whether a warrant was active for this specific Kenny Johnson. Logan therefore stopped Johnson, asked for his date of birth and full name, and verified that the warrant was active. In doing so, he neither physically restrained Johnson nor performed any type of search until after the warrant had been verified. Thus, the officers' brief detention of Johnson was commensurate with the initial purpose of the stop: to verify the status of the warrant.

Accordingly, we find that the stop of Johnson was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. 1868.

### Conclusion

For the reasons stated above, we find that the police officers in this case performed a valid *Terry* stop of Johnson. Accordingly, the cocaine found during the search of Johnson did not result from an invalid seizure of Johnson's person, and the trial court did not clearly err in denying the motion to suppress.[5] Affirmed.

JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER, Judge, concur.

---

5. There is no question that, once the warrant's active status had been confirmed, the officers were entitled to perform a search incident to the arrest of Johnson. *State v. Brasel*, 538 S.W.2d 325, 332 (Mo. banc 1976).

Likewise, there is no question that the police were entitled to perform an inventory search of Johnson once he had been taken to jail. *State v. Friend*, 711 S.W.2d 508, 510 (Mo. banc 1986).