**STATE of Missouri, Respondent,**

v.

**Kalvin M. LOYD, Appellant.**

**Nos. WD 71836, WD 71837.**

Missouri Court of Appeals,
Western District.

April 12, 2011.

Frederick J. Ernst, for Appellant.

Meghan A. Litecky, for Respondent.

Before Division One: THOMAS H. NEWTON, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Kalvin M. Loyd appeals from his convictions on two counts of Class A misdemeanor driving while revoked, § 302.321.[1] For the following reasons, Loyd's convictions and sentences are affirmed.

At 10:38 p.m. on October 21, 2008, Officer Barry Nolan of the Kansas City, Missouri Police Department was on patrol when he pulled behind a 1995 black Chevy Suburban traveling east on Linwood Street. While nothing stood out about this particular vehicle, Officer Nolan entered the license plate number from the Suburban into the computer system in his patrol car. Shortly thereafter, the computer displayed information from the Missouri Uniform Law Enforcement System ("MULES") stating that there was an outstanding arrest warrant on that license plate for Kalvin Loyd and providing Loyd's birthdate and social security number. Based on this information, Officer Nolan activated his lights, stopped the Suburban, and asked the driver for his license. Loyd, who was driving the vehicle, identified himself but stated that he did not have a driver's license. After a further computer check on Loyd revealed that Loyd's driver's license was revoked as a result of several prior convictions, Officer Nolan placed Loyd under arrest. The vehicle's owner, who was in the passenger seat, was allowed to take control of the vehicle.

At approximately 11:29 p.m. on November 24, 2008, Officer Nolan was on patrol with his partner Officer McCrea when he recognized the same 1995 black Chevy Suburban driving around. Officer Nolan ran another computer check of the vehicle's license plate number and was again notified that there was an outstanding arrest warrant for Loyd on that license

---

1. All statutory references are to RSMo (2000) unless otherwise noted.

plate. The officers stopped the vehicle and approached the driver, whom Officer Nolan recognized as Loyd. The vehicle's owner was in the passenger seat, and nine other people were in the rear seats and on the floor. After Officer Nolan again confirmed Loyd's license was revoked, he placed Loyd under arrest.

After he was charged with two counts of the Class A misdemeanor of driving while revoked, Loyd filed a motion to suppress the evidence related to both traffic stops, asserting that the stops were unlawful. Following a hearing, the trial court denied Loyd's motion. Loyd waived a jury trial and the parties agreed to allow the court to consider Officer Nolan's suppression hearing testimony in lieu of trial testimony. The court ultimately found Loyd guilty of driving with a revoked or suspended license on both October 21st and November 24th. The trial court sentenced Loyd to 180 days in the Jackson County Department of Corrections on each count.[2] The execution of Loyd's sentences was suspended, and he was placed on probation for two years.

In his sole point on appeal, Loyd claims that the trial court erred in overruling his motion to suppress evidence discovered after he was stopped by the police because Officer Nolan did not have reasonable suspicion or probable cause to initiate a computer check of his license plate number. He further contends that, even if the computer check was proper, the State failed to present evidence demonstrating that Officer Nolan had specific articulable facts to indicate that Loyd was in the vehicle.

■ "When reviewing the trial court's overruling of a motion to suppress, [we] consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Pike,* 162 S.W.3d 464, 472 (Mo. banc 2005). We reverse the trial court's decision only if it was clearly erroneous. *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990). Nonetheless, whether the Fourth Amendment has been violated is an issue we review *de novo. State v. Sullivan,* 49 S.W.3d 800, 806 (Mo. App. W.D.2001).

■ Both the United States and Missouri Constitutions guarantee citizens the right to be free from "unreasonable searches and seizures." *U.S. Const., Amend IV;*[3] *Mo. Const. Art. I, § 15; State v. Damask,* 936 S.W.2d 565, 570 (Mo. banc 1996). Generally, subject to certain exceptions, warrantless searches and seizures are deemed *per se* unreasonable. *State v. Johnson,* 316 S.W.3d 390, 395 (Mo. App. W.D.2010).

Loyd initially asserts that Officer Nolan's computer check for information associated with the Suburban's license plate number was an unreasonable, warrantless search which violated his Fourth Amendment rights. Whether a computer check of a license plate number is a "search" in the constitutional sense has not been addressed by a Missouri appellate court;[4]

---

**2.** As the trial court did not specify whether the sentences were to be served consecutively or concurrently, they are deemed to have been imposed concurrently pursuant to Rule 29.09. *State ex rel. Zinna v. Steele,* 301 S.W.3d 510, 514 (Mo. banc 2010).

**3.** The Fourth Amendment to the United States Constitution is made applicable to the states through the due process clause of the Four-

teenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961); *State v. Witherspoon,* 460 S.W.2d 281, 283–84 (Mo.1970).

**4.** In *State v. Dickson,* 252 S.W.3d 216 (Mo. App. E.D.2008), the Eastern District of this Court considered whether an officer made a lawful stop after he ran the car's license plate information and discovered "[a]n outstanding

however, federal courts have long held that computer checks for information associated with a license plate number, regardless of whether they are supported by reasonable suspicion or probable cause, do not violate the search and seizure provisions of the Fourth Amendment. *See U.S. v. Ellison*, 462 F.3d 557, 563 (6th Cir.2006) (collecting cases). "[E]very circuit that has considered the issue in a precedential opinion has held that license plate checks do not count as searches under the Fourth Amendment." *U.S. v. Diaz–Castaneda*, 494 F.3d 1146, 1150 (9th Cir.2007) (citing *Ellison*, 462 F.3d at 561); *see also Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir.1999); *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989). In *Diaz–Castaneda*, the court spelled out the rationale for these decisions:

> We agree that people do not have a subjective expectation of privacy in their license plates, and that even if they did, this expectation would not be one that society is prepared to recognize as reasonable. First, license plates are located on a vehicle's exterior, in plain view of all passersby, and are specifically intended to convey information about a vehicle to law enforcement authorities, among others. No one can reasonably think that his expectation of privacy has been violated when a police officer sees what is readily visible and uses the license plate number to verify the status of the car and its registered owner. Second, a license plate check is not intrusive. Unless the officer conducting the check discovers something that warrants stopping the vehicle, the driver does not even know that the check has

taken place. Third, the Supreme Court has ruled that people have no reasonable expectation of privacy in their vehicle identification number (VIN), which is located *inside* the vehicle but is typically visible from the outside. *See New York v. Class*, 475 U.S. 106, 113–14, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). If it was not a Fourth Amendment search when the police officers in *Class* opened a car's door and moved papers obscuring the VIN, it surely also was not a search when Helzer ran a computerized check of Diaz's license plate.

*Diaz–Castaneda*, 494 F.3d at 1151 (internal citations omitted).

Loyd nonetheless asks us to adopt the position taken by the dissent in *Ellison* that police officers should have to have reasonable suspicion to justify a check of a license plate number. The *Diaz–Castaneda* court gave careful consideration to the *Ellison* dissent and rejected the concerns expressed therein, noting:

> First, any "psychological invasion" stemming from a license plate check does not seem particularly severe. To the contrary, silent computerized checks, conducted without any inconvenience to the vehicle's driver, are less intrusive than many actions the Supreme Court has held are not Fourth Amendment searches. Second, the possibilities of database error and police officer abuse, while real, do not create a legitimate expectation of privacy where none existed before. Government actions do not become Fourth Amendment searches simply because they *might* be carried out improperly. If an officer does go outside the proper bounds of a license

warrant through MULES" for the vehicle's owner. The court concluded that the "existence of an outstanding warrant provided [the officer] with specific and articulable facts that supported the stop." *Id.* at 220–21. However-

er, the court did not consider or decide whether the initial search of the vehicle registration information was constitutionally permitted. *Id.* at 220.

plate search, it is *that* misconduct that might give rise to a constitutional or statutory violation.

Finally, there is no indication that license plate checks in Oregon result in the retrieval of information that "may not otherwise be public or accessible by the police without heightened suspicion." *Diaz–Castaneda,* 494 F.3d at 1151–52 (citations omitted).

■ For the same reasons, we likewise reject Loyd's contention that we should deem a computer check of a license plate number to be a search under the Fourth Amendment or Article I, § 15 of the Missouri Constitution. To the contrary, when, as here, a law enforcement officer sees a license plate in plain view and performs a computer check of the license number to access non-private information about the car and its owner in a law enforcement database, it is not a "search" for the purposes of these constitutional provisions. Accordingly, we reject Loyd's contention that his constitutional rights were violated when Officer Nolan used his computer to access information associated with the license plate number.

■ Loyd next argues that, even if Officer Nolan's license plate check was not an unreasonable search, Officer Nolan nonetheless did not have reasonable suspicion to justify stopping the Suburban because there was no indication that the vehicle was owned by Loyd or registered to him.

■ As noted *supra,* warrantless searches and seizures are generally deemed *per se* unreasonable. *Johnson,* 316 S.W.3d at 395. One recognized exception to this general rule is a *Terry* stop. *Id.* "Under the *Terry* stop exception, a police officer acts reasonably, and therefore does not violate the Fourth Amendment, when he or she briefly stops or detains an individual to investigate when the officer has a reasonable suspicion supported by specific and articulable facts that criminal activity is afoot." *Id.* (internal quotation omitted). Reasonable suspicion requires less certainty than that required for probable cause, and officers are "permitted to make use of all of the information available to them, and they may make inferences from that information that would not be made by members of the public, who lack access to the officer's knowledge, information, and training." *Id.* at 396. "The law justifies stopping possibly an innocent person, because the stop is a minimal intrusion, which allows the officers to briefly investigate further." *State v. Long,* 303 S.W.3d 198, 202 (Mo.App. W.D.2010).

When Officer Nolan performed the computer check on the Suburban's license plate number, the MULES database indicated that there was an outstanding arrest warrant for Loyd associated with that license plate. Loyd points out that the computer check did not reflect that Loyd was the owner of the vehicle, and that Officer Nolan in his testimony offered no explanation as to why Loyd's name and the warrant would be "associated" with the vehicle or license plate. While this is true, Loyd overlooks the fact that there was an explanation for this seeming inadequacy in the State's case contained on the videotape of the second stop, which was admitted into evidence at the suppression hearing without objection. In the video, Officer McCrea, Officer Nolan's partner, states that, in the MULES database, warrants are assigned to the license plate numbers of vehicles in which the individual for whom the warrant was issued has previously been stopped and ticketed or arrested. Thus, Loyd's name and warrant information appeared because the warrant was issued on that license plate number based on Loyd having been stopped in the same

vehicle previously. Under these circumstances, a law enforcement officer receiving MULES computer information that there was an arrest warrant associated with that license plate has a reasonable suspicion to justify an investigative stop of the vehicle to see if the person for whom the warrant was issued is present therein. *See State v. Dickson,* 252 S.W.3d 216, 220 (Mo.App. E.D.2008).

Since evidence in the record supports the trial court's determination that Officer Nolan's investigatory stops of the Suburban on both occasions was supported by reasonable suspicion, the trial court did not err in denying Loyd's motion to suppress the evidence obtained after those stops. Point denied.

The judgment is affirmed.

All concur.