**STATE of Missouri, Respondent,**

v.

**Richard Shannon SNOW, Appellant.**

**No. WD 69443.**

Missouri Court of Appeals, Western District.

Nov. 10, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 2009.

Application for Transfer Denied Jan. 26, 2010.

William J. Swift, Assistant State Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division III: THOMAS H. NEWTON, Chief Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Richard Shannon Snow (Snow) appeals the trial court's judgment convicting him, after a jury trial, of one count of possession of a controlled substance in violation of section 195.202.[1] On appeal, he presents three points. We affirm.

In 2004, Snow rented the house at 5708 Northeast Compton (the house) from his father, Ronnie Snow (Ronnie). In 2005, due to the unfit conditions of the house, Ronnie consented to the City of Kansas City's condemnation of the house. The City ordered Snow to vacate the house and posted a notice on the door, which stated that it was illegal for anybody to occupy the house.

Thereafter, on April 20, 2006, Sergeant Daniel Graves of the Kansas City Police Department drove by the house. He observed several people, including Snow, in the yard. Sergeant Graves detained them on the basis that the City had condemned the house and prohibited people from living in it. By this point, other police officers had arrived on the scene. The police heard other people in the house and entered the house to remove them. While searching for the people, the police found evidence of controlled substances and drug paraphernalia.

The police asked Snow if they could search the rest of the house. He told them to ask Ronnie because it was his house. The police contacted Ronnie and requested his consent, and Ronnie signed the consent form. During the search of the house, the police seized plastic baggies containing methamphetamine. The police arrested Snow, and the State charged him with one count of possession of a controlled substance.

Before trial, Snow filed two motions seeking to suppress evidence on the basis that the police's search violated the Fourth Amendment of the United States Constitution. After a hearing on the motions, the trial court issued an order excluding some, but not all, of the evidence. The trial court, however, reconsidered its order and determined that Snow lacked standing to

1. All statutory references are to RSMo 2000, unless otherwise indicated.

challenge the search. The trial court, therefore, issued a revised order overruling both of Snow's suppression motions.

Snow's case proceeded to trial on December 17, 2007. At the conclusion of the evidence, the jury returned a guilty verdict. The trial court then conducted the sentencing phase of the trial. At the sentencing phase, over Snow's objection, the trial court permitted the State to present evidence that Snow was a drug dealer. The jury recommended a sentence of four years. The trial court entered judgment against Snow and sentenced him to four years in the Department of Corrections. This appeal follows.

In his first point on appeal, Snow claims that the trial court erred in overruling his motions to suppress the evidence of drugs and drug paraphernalia that the police seized during their search of the house because he argues that the search was a constitutional violation of his rights guaranteed under the Fourth Amendment of the United States Constitution. In denying his motions, the trial court concluded that Snow lacked standing to challenge the search. In the alternative, the trial court concluded that all of the evidence collected by the police after Ronnie had consented to the search of the house was admissible. In his first point, Snow challenges both of the trial court's conclusions. Because we agree with the trial court that Snow lacked standing to challenge the police's search of the house, we need only address that part of his claim of error.

Snow argues that the trial court erred in overruling his motions to suppress on the basis that he lacked standing to challenge the police search because he claims that the record at the suppression hearing and at trial established that he had a legitimate expectation of privacy at the house. In support thereof, Snow argues that he had a legitimate expectation of privacy at the

house because, pursuant to a rent-to-own agreement with his father, he was the owner of the house. We disagree.

Our review of the trial court's order denying a defendant's motion to suppress is limited to a determination of whether or not there is substantial evidence to support the order. *State v. Ramires*, 152 S.W.3d 385, 390 (Mo.App. W.D.2004). In reviewing the trial court's order, we review both the record of the suppression hearing and the record at trial. *Id.* at 391. In doing so, we view the evidence and all reasonable inferences from that evidence in a light most favorable to the trial court's order. *Id.* We defer to the trial court's determination regarding the credibility of the witnesses. *Id.* The ultimate issue of whether or not the police violated the Fourth Amendment is a question of law, which we review *de novo. Id.*

■ The Fourth Amendment to the U.S. Constitution, which is enforceable against the states through the due process clause of the Fourteenth Amendment, guarantees the right of the people to be secure from unreasonable searches and seizures. *Id.* Article I, section 15 of the Missouri Constitution guarantees this same right. *Id.* Because of these constitutional guarantees, warrantless searches and seizures are deemed *per se* unreasonable unless the search and seizure fits into a well-established exception. *Id.*

Section 542.296, which governs a defendant's motion to suppress, states that:

1. A person aggrieved by an unlawful seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure may file a motion to suppress the use in evidence of the property or matter seized. For the purposes of this section, a pending criminal proceeding shall mean any

criminal investigation being conducted with the intention of using the seized subject matter in seeking an indictment or information or when an information has been issued or an indictment returned.

. . . .

6. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. The burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled.

Pursuant to section 542.296.6, the State has the burden of production and persuasion to show by a preponderance of the evidence that the trial court must overrule the defendant's motion. *See also id.* Under section 542.296.1, however, the defendant has the initial burden of proving that he is aggrieved by the search and seizure. *Id.* In other words, he must show that he has standing to challenge the search and seizure. *Id.*

 To demonstrate that he has standing to challenge a search and seizure, the defendant must show that he has a legitimate expectation of privacy in the place or thing that the police searched. *State v. Toolen,* 945 S.W.2d 629, 631 (Mo. App. E.D.1997). To prove that he had a legitimate expectation of privacy in the place searched, the defendant must establish that (1) he had a subjective expectation of privacy in the place or thing searched, and (2) his expectation is reasonable. *Id.* The court uses concepts of property law and societal standards to determine the reasonableness of the defendant's expectation. *Id.*

 Under this test, a defendant normally has standing to challenge a search of a house he is legally occupying, *State v. Johnson,* 943 S.W.2d 285, 290 (Mo.App.

E.D.1997), or an apartment that he rents. *State v. Dennis,* 182 Ohio App.3d 674, 681, 914 N.E.2d 1071 (Ohio App. 2 Dist., 2009). In this case, the trial court determined that Snow, however, did not have standing to challenge the police's search and seizure of items from the house because he was not the owner of the house and he was no longer legally capable of renting it:

The findings of the court at the conclusion of the evidence in the motions to suppress, orally announced from the bench, including a finding and conclusion that defendant was not the owner of the premises and that he had no possessory or occupational right to the premises by virtue of the posting (condemnation) of the house at the request of one of the owners, Ronnie Snow. Those specific words were not used in the announcement, but those are the findings and conclusion of this court.

These findings and conclusions eliminate any standing of the defendant to complain about the searches that were conducted. . . . Both motions to suppress filed by the defendant are now overruled.

The trial court's findings are supported by substantial evidence.

At the suppression hearing, Sergeant Daniel Graves of the Kansas City Police Department testified that, when he approached Snow about searching the house, Snow told him that he did not own the house and that he should go find his father to ask him if he could search it. The trial court was free to believe this testimony. *Zink v. State,* 278 S.W.3d 170, 192 (Mo. banc 2009). From this evidence, the trial court could have found that Snow was disclaiming any ownership or possessory interest in the house, which would support a finding that he had no subjective expec-

tation of privacy in the property. *Toolen,* 945 S.W.2d at 632.

Even assuming, however, that Snow did have a subjective expectation of privacy in the house, the trial court did not err in finding that he lacked standing because Snow's subjective expectation was objectively unreasonable. At the hearing, there was substantial evidence to find that Snow's father, Ronnie, was the owner of the property. At the hearing, Ronnie testified that he purchased the property in 2004. Ronnie testified that, due to the condition of the house, he voluntarily consented to its condemnation. The City posted a condemnation notice on the house, which listed Ronnie as the owner of the house. Ronnie also signed the condemnation notice on the line that asked for the owner's signature. From these facts, the trial court had a reasonable basis for concluding that Ronnie—and not Snow— owned the house.

There was also substantial evidence at the hearing to establish that, while Snow had previously rented the house, he was no longer doing so because the City had condemned it. At the hearing, the State's evidence showed that, after Ronnie had consented to have the house condemned, the City sent Snow an order to vacate the premises, which informed him that the house was unfit to live in and that he was no longer legally allowed to live there. The City's posted notice at the house stated that it was unlawful for anyone to occupy the house. From this evidence, the trial court had a reasonable basis for concluding that Ronnie was not allowed to rent the house to anybody, including Snow. This evidence supports the trial court's conclusion that Snow had no objective expectation of privacy in the house. *United States v. Washington,* 573 F.3d 279, 283 (6th Cir.2009) (stating that it is "certainly true a person cannot acquire an expecta-

tion of privacy in a structure that has been legally condemned [because] any presence is forbidden"); *United States v. Jones,* 556 F.Supp.2d 985, 990 (E.D.Mo.2008) (stating that "[t]he lack of an expectation of privacy is even more conclusive if one accepts Defendant's suggestion that the Residence had been condemned and no one was living there").

Furthermore, at trial, Ronnie testified that Snow was currently living with him. This additional evidence, again, supports the trial court's conclusion that Snow was no longer renting the house at 5708 Northeast Compton Avenue. Given the totality of the circumstances, it is apparent that Snow had no objective expectation of privacy at the house at 5708 Northeast Compton Avenue.

On appeal, Snow does not deny this evidence. Rather, he points to his testimony at the hearing in which he testified that, although he was no longer living at the house, he was the owner of the property because he had a valid *oral* rent-to-own agreement with his father. Snow is correct that he gave this testimony at the hearing. The trial court, however, was free to disbelieve his testimony, *Zink,* 278 S.W.3d at 192, which it obviously did.

Furthermore, there was evidence in the record to support the conclusion that Snow did not possess a valid rent-to-own agreement with Ronnie. At trial, Ronnie testified that his plan was to clean the house and then either attempt to rent the house or sell it. From this testimony, the trial court could have concluded that Snow did not have a binding rent-to-own agreement with Ronnie. Furthermore, even Snow admits that his rent-to-own agreement was an oral agreement between him and his father. Of course, an oral agreement for the sale of land is unenforceable under the Statute of Frauds doctrine. *Downey v. McKee,* 218 S.W.3d 492, 497 (Mo.App.

W.D.2007). The mere fact that parties never reduced their "agreement" to writing would support the trial court's finding that no objective person would think there was an agreement between the parties. Finally, Snow admitted at trial that he had not paid Ronnie very much rent money in the last few months. This testimony would also support a finding that, even if Snow possessed a valid rent-to-own agreement, he had defaulted on it.

In summary, the record supports the trial court's finding that Snow did not own or rent the house at 5708 Northeast Compton Avenue. Snow, therefore, did not have a reasonable expectation of privacy at the house on either a subjective or objective analysis thereof. The trial court did not err in concluding that he had no standing to challenge the police's search of the house. Snow's first point has no merit.

■ In his second point, Snow claims that the trial court erred in submitting Jury Instruction No. 8, the court's sentencing instruction, because he argues it misstated the applicable law of section 558.011 in that the instruction instructed the jury that the minimum sentence was two years, and Snow argues that the plain and ordinary wording of section 558.011 states that the minimum sentence is one year.

■ Rule 28.02(c)[2] provides: "Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." Thus, normally, Rule 28.02(c) requires the trial court to use any applicable MAI–CR instruction. The MAI–CR and its Notes on Use, however, are not

---

2. All rule references are to Missouri Rules of Criminal Procedure 2008, unless otherwise

binding to the extent that they conflict with the substantive law. *State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997). If the applicable MAI–CR conflicts with the substantive law, then the trial court must refuse to use it. *Id.*

■ Even if the trial court gives an erroneous instruction, we will not necessarily reverse its judgment. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App. W.D.2000).

> Error standing alone ... is not sufficient to overturn the jury's determination of guilt. There must be a showing of prejudice to the appellant as a result of the error before there are grounds to upset the verdict. Prejudice, as that term is used in connection with erroneous jury instructions, is defined as the potential for misleading or confusing the jury.

*Id.* at 96–97 (quotation marks and citations omitted).

In this case, Snow's case was bifurcated. At the conclusion of the sentencing portion of his trial, the trial court submitted Jury Instruction No. 8 to the jury. Instruction No. 8 stated that:

> You have found the defendant guilty of possession of a controlled substance. At this stage of the trial, it will be your duty to determine within the limits prescribed by law the punishment that must be imposed for that offense.
>
> The punishment prescribed by law for possession of a controlled substance is:
>
> 1. Imprisonment for a term of years fixed by you, but *not less than two years* and not to exceed seven years.
> 2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year.

indicated.

3. Imprisonment for a term of years fixed by you, but *not less than two years* and not to exceed seven years and in addition a fine, the amount to be determined by the Court.

4. Imprisonment in the county jail for a term fixed by you, but not to exceed one year and in addition a fine, the amount to be determined by the Court.

5. No imprisonment but a fine, in an amount to be determined by the Court.

The maximum fine which the Court may impose is $5,000.00.

(Emphasis added.)

The trial court adapted Jury Instruction No. 8 from MAI–CR 305.1 (1–1–07). In crafting Jury Instruction No. 8, the trial court correctly followed the form and language of MAI–CR 305.1. The Missouri Supreme Court designed MAI–CR 305.1 to follow the sentencing structure of section 558.011.

Section 558.011 governs the authorized terms of imprisonment and states that:

1. The authorized terms of imprisonment, including both prison and conditional release terms, are:

. . . .

(3) For a class C felony, *a term of years not to exceed seven years;*

. . . .

2. *In cases of class C and D felonies, the court shall have discretion to imprison for a special term not to exceed one year in the county jail or other authorized penal institution, and the place of confinement shall be fixed by the court.* If the court imposes a sentence of imprisonment for a term longer than one year upon a person convicted of a class C or D felony, it shall commit the person to the custody of the department of corrections for a term of years *not less*

*than two years* and not exceeding the maximum authorized terms provided in subdivisions (3) and (4) of subsection 1 of this section.

(Emphasis added.)

In *State v. Quisenberry,* the Missouri Supreme Court interpreted the phrase "a term of years" to mean "a term of whole years and not less than one." 639 S.W.2d 579, 587 (Mo. banc 1982). Thus, the Missouri Supreme Court concluded that the minimum term for a class C felony under section 558.011.1(3) is one year. *Id.* at 588. The Missouri Supreme Court also pointed out that section 558.011.2 allows the trial court to sentence a defendant to a term not to exceed one year in the county jail. *Id.* The Missouri Supreme Court determined that, when the jury imposes a one-year sentence on the defendant, section 558.011.1 grants the trial court the discretion to place the defendant in the custody of *either* the county jail or other authorized penal institution:

Subsection 2 grants the court discretion to impose on class C and D felons a special term not to exceed one year in the county jail or other authorized penal institution, and requires the court to commit class C and D felons sentenced to terms *longer than one year* to the division of corrections. These provisions permit the conclusion that if a class C or D felon is sentenced to a term of one year, the court has discretion to commit him either to the Division of Corrections for a regular sentence (Subsection 3), or to the county jail or other authorized penal institution for a special term (Subsection 2). At best, the statute is ambiguous, and we believe the ambiguity should be resolved in favor of maximum discretion in the jury. Accordingly, we rule that the minimum authorized term

of imprisonment for a class C felony under § 558.011.1(3) is one year.

*Id.* (footnote omitted).

Snow, therefore, is correct that, unless he is placed in the county jail where he can serve up to a year, the minimum sentence for the class C felony is one year. However, the plain and ordinary language of the trial court's instruction instructed the jury that it could recommend a sentence of any term from one day in the county jail to seven years in the department of corrections:

1. Imprisonment for a term of years fixed by you, but not less than two years and not to exceed seven years.

2. Imprisonment in the county jail for a term fixed by you, *but not to exceed one year.*

Jury Instruction No. 8, therefore, gave the jury the option to recommend a one-year sentence for Snow.[3] The trial court, therefore, did not err in submitting Jury Instruction No. 8. Snow's point is without merit.

■■■ In his third point, Snow argues that the trial court erred in overruling his objection to the State's introduction of evidence of his prior unadjudicated bad acts during the sentencing phase of his bifurcated trial. Snow argues that the trial court misapplied the law when it concluded that the evidence was admissible as a matter of law and that the trial court had no discretion to exclude the evidence. Snow claims that the record shows that the trial court would have excluded the evidence if the trial court had understood that it had the discretion to do so.

Sections 557.036.2 and .3 governs the sentencing phase of a bifurcated trial and states that:

2. Where an offense is submitted to the jury, the trial shall proceed in two stages. At the first stage, the jury shall decide only whether the defendant is guilty or not guilty of any submitted offense. The issue of punishment shall not be submitted to the jury at the first stage.

3. If the jury at the first stage of a trial finds the defendant guilty of the submitted offense, the second stage of the trial shall proceed. The issue at the second stage of the trial shall be the punishment to be assessed and declared. *Evidence supporting or mitigating punishment may be presented. Such evidence may include, within the discretion of the court, evidence concerning the impact of the crime upon the victim, the victim's family and others, the nature and circumstances of the offense, and the history and character of the defendant.* Rebuttal and surrebuttal evidence may be presented. The state shall be the first to proceed. The court shall instruct the jury as to the range of punishment authorized by statute for each submitted offense. The attorneys may argue the issue of punishment to the jury, and the state shall have the right to open and close the argument. The jury shall assess and declare the punishment as authorized by statute.

(Emphasis added.) Under this section, the trial court has discretion to admit whatever evidence it deems to be helpful to the jury in assessing punishment. *State v. Clark,* 197 S.W.3d 598, 600 (Mo. banc 2006).

At trial, pursuant to section 577.036.3, the trial court admitted, over Snow's objection, testimony that he had previously

---

**3.** Of note, the jury recommended a sentence of *four* years, apparently not favorably persuaded by the options of one– or two-year minimum sentences for Snow, further undercutting Snow's argument that he suffered prejudice to begin with.

been a drug dealer. In overruling Snow's objection to this testimony, the trial court stated that, pursuant to the Missouri Supreme Court precedent in *State v. Clark*, 197 S.W.3d 598, 600 (Mo. banc 2006), it believed that the threshold for admitting character evidence under section 557.036.3 is very low:

> THE COURT: I think the law's a little more liberal than it would be if I were a legislator or even an appellate court. But I am bound by what the legislature puts into play and what the Courts well above me on the pecking order have had to say about it.
>
> . . . .
>
> THE COURT: I can remember turning [*State v. Clark*] over in my mind when it was fresh, but I believe the law that binds me is clear. I've got to let into evidence statements attributed to the defendant where he is acknowledging criminal acts in his past.
>
> . . . .
>
> THE COURT: As I have viewed the development of this law over the last few years as we've seen it develop, the tendency seems to be very liberal in what is allowed.

In making this statement, the trial court did not misapply the law.

The express language of section 557.036.3 allows the State to admit a wide range of evidence at the sentencing phase of the trial. This evidence includes victim-impact evidence, evidence of the nature and circumstances of the offense, and evidence of the history and character of the defendant. Missouri appellate courts have noted that, although this evidence may be relevant to the defendant's punishment, it is irrelevant to his guilt and so the trial court could not admit the evidence under the former unitary trial system. *State v. Prosser*, 186 S.W.3d 330, 333 (Mo.App. E.D.2005). Thus, the appellate courts have concluded that the General Assembly's purpose in bifurcating the trial and having a separate sentencing phase is to allow the parties to introduce a broader range of evidence relevant to the defendant's punishment. *Id.*

In that regard, both the State and the defendant may introduce evidence that relates to the defendant's character. *Clark*, 197 S.W.3d at 600. The State may introduce evidence of the defendant's prior unadjudicated criminal conduct. *Id.* In fact, in *Clark*, the Missouri Supreme Court stated that, under this rule, the State could introduce evidence that the defendant had been acquitted of murdering four other people. *Id.* The trial court was correct to conclude that, under section 557.036.3 and *Clark*, the General Assembly and the Supreme Court have adopted a very low admissibility threshold for determining whether or not evidence of the defendant's character is helpful for the jury to assess punishment.

Furthermore, contrary to Snow's argument, the trial court never concluded that the evidence of Snow's drug-dealing history was not helpful to the jury in the sentencing phase. Rather, the trial court stated that, if it were responsible for writing section 557.036.3, it would not allow the State to introduce this type of evidence. The trial court was correct to realize that it could not make evidentiary rulings based on its policy preferences. The trial court was also correct to conclude that, based on the current law, evidence of Snow's prior unadjudicated criminal conduct was admissible in the sentencing phase. The trial court did not err in overruling Snow's objection to the State's evidence, and Snow's point is without merit.

We, therefore, affirm the trial court's judgment.

THOMAS H. NEWTON, Chief Judge, and KAREN KING MITCHELL, Judge, concur.