STATE of Missouri, Appellant,

v.

James Arthur CLAMPITT, Respondent.

No. WD 73943.

Missouri Court of Appeals, Western District.

Jan. 24, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 2012.

Application for Transfer Denied May 29, 2012.

Shaun J. Mackelprang, for Appellant.

Ryan Bertels, for Respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, JOSEPH M. ELLIS, Judge and JAMES WILLIAMS, Special Judge.

JOSEPH M. ELLIS, Judge.

The State of Missouri appeals from a judgment entered by the Circuit Court of Chariton County granting James Clampitt's motion to suppress the text message content and detail for incoming and outgoing text messages from his cell phone that the State obtained from U.S. Cellular by use of four investigative subpoenas. For the following reasons, the judgment is affirmed.

On July 30, 2010, the State charged James Clampitt with first-degree involuntary manslaughter, § 565.024, RSMo Cum. Supp.2008, and leaving the scene of a motor vehicle accident, § 577.060.[1] The charges arose out of an automobile accident that occurred on June 13, 2010, in Audrain County, Missouri.[2] On February 9, 2011, Clampitt filed a motion to suppress "[a]ll evidence obtained through or from the search and seizure of [his] cell phone and cell phone records." The State had obtained such information from U.S. Cellular through the use of four investigative subpoenas issued in June and July of 2010.

The first investigative subpoena was issued on June 18, 2010, and requested U.S. Cellular provide the State with tower location information for Audrain County as well as "text message content and detail for incoming and outgoing text messages" for the number 573–473–8364 "for June 13, 2010 through present." The second investigative subpoena was also issued on June 18, 2010, and requested that U.S. Cellular provide the "text message content and detail for incoming and outgoing text messages for any and all phone numbers un-

---

1. All statutory citations are to RSMo 2000 unless otherwise noted.

2. This case was originally filed in Audrain County but was later moved to Chariton County on a change of venue.

der the account" of number 573–473–2599 "for June 13, 2010 through present."

The third investigative subpoena was issued on June 24, 2010, and requested U.S. Cellular provide the State with all subscriber information for incoming and outgoing calls, including an "itemized statement of incoming and outgoing calls and text messages, and [n]ame, contact information and billing address of subscriber for" the numbers 573–721–1917 and 573–253–8040 "for June 13, 2010 through present." The fourth investigative subpoena was issued on July 1, 2010 and requested U.S. Cellular provide "text message content and detail for incoming and outgoing text messages" for the number 573–473–2599 "for June 24, 2010 through present."

At a hearing conducted on the motion, the Special Prosecutor originally assigned to investigate Clampitt's case testified that she requested Clampitt's incoming and outgoing text messages beyond the twenty-four-hour period surrounding the accident in hopes of obtaining an admission from Clampitt that either he or a member of his family was driving the vehicle at the time of the accident. The Special Prosecutor also testified that she did not seek a warrant because she believed the text messages "were records that were in possession of a third party" and that the investigative subpoenas were a sufficient means for obtaining such information from third parties.

On May 18, 2011, the trial court granted Clampitt's motion to suppress, finding Clampitt had a reasonable expectation of privacy in the text messages, the investigative subpoenas used to obtain the text messages were unreasonable, and that the good faith exception to the exclusionary

rule did not apply to prosecutors. The State's notice of appeal was timely filed.

In its first point on appeal, the State asserts the trial court erred in sustaining Clampitt's motion to suppress the content of his text messages because he had no reasonable expectation of privacy in the content of his text messages and therefore lacked standing to challenge the search and seizure of his cell phone records.

■■■ "A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous." *State v. Williams*, 334 S.W.3d 177, 179 (Mo.App. W.D.2011) (internal quotation omitted). This court "consider[s] the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling on a motion to suppress." *State v. Allison*, 326 S.W.3d 81, 87 (Mo.App. W.D.2010) (internal quotation omitted). "We review the facts and inferences therefrom in the light most favorable to the trial court's ruling, and disregard all contrary inferences." *State v. Nelson*, 334 S.W.3d 189, 193 (Mo.App. W.D.2011) (internal quotation omitted). However, "[w]hether conduct violates the Fourth Amendment is an issue of law that this court reviews *de novo*." *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo. banc 2011).

In Missouri, a motion to suppress can be brought on grounds that an illegal search and seizure occurred and thereby violated the Fourth Amendment rights of the movant. § 542.296.5(5); *State v. Snow*, 299 S.W.3d 710, 713–14 (Mo.App. W.D.2009). The Fourth Amendment to the United States Constitution guarantees citizens the right to be free from unreasonable searches and seizures.[3] U.S. Const.

---

3. The Fourth Amendment to the United States Constitution was made applicable to the states through the Due Process Clause of the

Fourteenth Amendment. *See State v. Grayson*, 336 S.W.3d 138, 143 n. 2 (Mo. banc 2011). "The constitutional protections af-

amend. IV; *State v. Loyd*, 338 S.W.3d 863, 865 (Mo.App. W.D.2011). "Subject to only a few specific and well-delineated exceptions, warrantless searches and seizures are deemed per se unreasonable." *State v. Johnson*, 316 S.W.3d 390, 395 (Mo. App. W.D.2010).

 The State contends it did not violate Clampitt's Fourth Amendment rights because Clampitt had no reasonable expectation of privacy in his text messaging records and thereby lacked standing to challenge the State obtaining such records by use of investigative subpoena. "In order for a defendant to have standing to assert a violation of his Fourth Amendment rights, the defendant must have a legitimate expectation of privacy in the place or thing searched." *State v. Gabbert*, 213 S.W.3d 713, 718 (Mo.App. W.D. 2007). "Whether a person has a reasonable expectation of privacy depends on a two-part inquiry, 'first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable.'" *State v. Bates*, 344 S.W.3d 783, 787 (Mo.App. S.D.2011) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). "The court uses concepts of property law and societal standards to determine the reasonableness of the defendant's expectation" of privacy. *Snow*, 299 S.W.3d at 714.

The trial court relied on *City of Ontario v. Quon*, ── U.S. ──, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010), for the proposition that people have a reasonable expectation of privacy in their text messages. But as the State points out, and Clampitt concedes, the Court in *Quon* was dealing with an employee's use of an employer provided pager. *Id.* at 2624. While the Court recognized that the case touched "issues of farreaching significance," *id.*, and discussed at some length "employees' privacy expectations vis-à-vis employer provided technological equipment," *id.* at 2630, the Court declined to set constitutional parameters and disposed of the case on narrower grounds. Nevertheless, in discussing those employee-employer issues, the Court strongly suggested that outside the employee-employer context, the public would have a reasonable expectation of privacy in cell phone and text message communications. For instance, the Court noted:

> Cell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification. That might strengthen the case for an expectation of privacy [in the employee-employer context]. On the other hand, the ubiquity of those devices has made them generally affordable, so one could counter that employees who need cell phones or similar devices for personal matters can purchase and pay for their own.

*Id.* The Court later equated the search of a personal e-mail account or pager with a wiretap of a person's phone line. *Id.* at 2631. ("[T]he audit of messages on Quon's employer-provided pager was not nearly as intrusive as a search of his personal e-mail account or pager, or a wiretap on his home phone line, would have been."). Thus, it is clear the Court is saying that, outside the workplace and employer-provided technological equipment, a person has a reasonable expectation of privacy

forded citizens under article I, section 15 of the Missouri Constitution are parallel to, and coextensive with, those of the Fourth Amendment to the United States Constitution and

are to be interpreted in such a manner." *State v. Waldrup*, 331 S.W.3d 668, 672 n. 3 (Mo. banc 2011).

with regard to cell phone and text message communications on or via privately owned equipment.

Consistent with the Court's intimation in *Quon*, other courts have found that individuals have a reasonable expectation of privacy in their cell phones and the information stored therein, including text messages. *See, e.g., United States v. Zavala*, 541 F.3d 562, 577 (5th Cir.2008) (finding "cell phones contain a wealth of private information, including emails, text messages, call histories, address books, and subscriber numbers"; thus, defendant "had a reasonable expectation of privacy regarding such information"); *United States v. Finley*, 477 F.3d 250, 259 (5th Cir.2007) (concluding defendant had a reasonable expectation of privacy in the call record and text messages on his cell phone because he had a possessory interest in the phone and took "normal precautions to maintain his privacy in the phone"); *United States v. Davis*, 787 F.Supp.2d 1165, 1170 (D.Or.2011) (finding "[a] person has a reasonable expectation of privacy in his or her personal cell phone, including call records and text messages"); *United States v. Gomez*, 807 F.Supp.2d 1134, 1141 (S.D.Fla. 2011) (finding defendant had a reasonable expectation of privacy in his cell phone because "the weight of authority agrees that accessing a cell phone's call log or text message folder is considered a 'search' for Fourth Amendment purposes"); *United States v. Quintana*, 594 F.Supp.2d 1291, 1299 (M.D.Fla.2009) (stating "a search warrant is required to search the contents of a cell phone unless an exception to the warrant requirement exists"); *State v. Smith*, 124 Ohio St.3d 163, 920 N.E.2d 949, 956 (2009) (finding cell phone users have "a reasonable and justifiable expectation of a higher level of privacy in the information [cell phones] contain" because of their multi-functional uses and ability to store large amounts of private data, including text messages).

This body of case law notwithstanding, the State claims that Clampitt had no reasonable expectation of privacy in the contents of his text messages because the text messages were in the possession of a third party. The State points out that generally, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44, 99 S.Ct. 2577, 2582, 61 L.Ed.2d 220 (1979). While this is true, courts have held that "the mere *ability* of a third-party intermediary to access the contents of a communication cannot be sufficient to extinguish a reasonable expectation of privacy." *United States v. Warshak*, 631 F.3d 266, 286 (6th Cir.2010) (emphasis in original).

In *Warshak*, the court addressed whether law enforcement officers violated the defendant's Fourth Amendment rights by obtaining the content of the defendant's emails from his internet service provider ("ISP") without a warrant. *Id.* at 281–82. In analyzing the issue and reaching its decision, the *Warshak* court reasoned that emails are analogous to phone calls and letters, thereby entitling email communications to the same strong Fourth Amendment protections traditionally afforded to telephone and letter communications. *See id.* at 285–87 (discussing *Katz v. United States*, 389 U.S. 347, 352–53, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) and *Ex Parte Jackson*, 96 U.S. 727, 733, 24 L.Ed. 877 (1877)). The court emphasized that the police cannot intercept a letter without a warrant even after that letter has been handed over to third parties (mail carriers) for delivery. *Id.* at 285 (citing *Ex Parte Jackson*, 96 U.S. at 733). The court found the same to be true of phone calls, which must be transmitted through a service provider, who has the capacity to monitor and

record the calls, yet callers are still "entitled to assume that the words [they] utter[ ] into the mouthpiece [will] not be broadcast to the world." *Id.* (quoting *Katz*, 389 U.S. at 352, 88 S.Ct. at 512). Thus, the court concluded "the threat or possibility of access is not decisive when it comes to the reasonableness of an expectation of privacy." *Id.* at 287.

Based on this analysis, the court held as follows:

> Accordingly, we hold that a subscriber enjoys a reasonable expectation of privacy in the contents of emails that are stored with, or sent or received through, a commercial ISP. The government may not compel a commercial ISP to turn over the contents of a subscriber's emails without first obtaining a warrant based on probable cause. Therefore, because they did not obtain a warrant, the government agents violated the Fourth Amendment when they obtained the contents of Warshak's emails. Moreover, to the extent that the SCA [18 U.S.C. § 2703, the Stored Communications Act] purports to permit the government to obtain such emails warrantlessly, the SCA is unconstitutional.[4]

*Id.* at 288 (internal quotation and citations omitted) (emphasis in original).

■ The rationale used by the *Warshak* court in establishing individuals' reasonable expectation of privacy in the contents of their email is equally applicable to cell phone users' expectation of privacy in the contents of their text messages. Cell phone providers have the ability to access their subscribers' text messages; however, the providers' ability to access those messages does not diminish subscribers' expectation of privacy in their text message communications. Rather, subscribers assume that the contents of their text messages will remain private despite the necessity of a third party to complete the correspondence. Callers have long enjoyed Fourth Amendment protection of the information they communicate over the phone. We see no reason why the same information communicated textually from that same device should receive any less protection under the Fourth Amendment.

Furthermore, society's continued expectation of privacy in communications made by letter or phone call demonstrates its willingness to recognize a legitimate expectation of privacy in the contents of text messages. What individuals once communicated through phone calls and letters can now be sent in a text message. Thus, as text messaging becomes an ever-increasing substitute for the more traditional forms of communication, it follows that society expects the contents of text messages to receive the same Fourth Amendment protections afforded to letters and phone calls. We therefore find that the trial court did not err in concluding that Clampitt had a reasonable expectation of privacy in the contents of his text messages.

---

**4.** In *Warshak*, the government claimed, and the court found, that it acted in good faith reliance on 18 U.S.C. § 2703, the Stored Communications Act ("SCA"), when it compelled Warshak's ISP to release the contents of his emails. *Warshak*, 631 F.3d at 282. Although Warshak argued that the provisions of the SCA at issue in that case were plainly unconstitutional and, therefore, a reasonable police officer would realize the need for a search warrant, the court rejected that contention and, as noted, found good faith reliance under the circumstances of that case. But the court pointed out that, after its holding in the case, "a reasonable officer may no longer assume that the Constitution permits warrantless searches of private emails." *Id.* at 289, n. 17.

In this case, the State makes no claim that the SCA is applicable, or that it relied on the statute in seeking the investigative subpoenas. Consequently, we do not address the issue.

In its second point on appeal, the State asserts that even if Clampitt has a reasonable expectation of privacy in his text messages, the trial court still erred in suppressing the records of his incoming and outgoing text messages because the State's use of investigative subpoenas to obtain such information was not unreasonable. The State obtained the contents of Clampitt's incoming and outgoing text messages through the use of four investigative subpoenas pursuant to section 56.085, which provides:

> In the course of a criminal investigation, the prosecuting or circuit attorney may request the circuit or associate circuit judge to issue a subpoena to any witness who may have information for the purpose of oral examination under oath to require the production of books, papers, records, or other material of any evidentiary nature at the office of the prosecuting or circuit attorney requesting the subpoena.[5]

Because the Fourth Amendment was not intended to interfere with the power of the courts to compel the production of documentary evidence through the use of subpoena, prosecutors applying for investigative subpoenas do not have to comply with the same Fourth Amendment requirements necessary to obtain a search warrant. *Johnson v. State*, 925 S.W.2d 834, 836 (Mo.1996). However, the Fourth Amendment still applies to investigative subpoenas to the extent that it requires "the subpoena be sufficiently limited in scope, relevant in purpose, and specific in

directive so that compliance will not be unreasonably burdensome." *Id.* (internal quotation omitted).

The investigative subpoenas issued in this case were not sufficiently limited in scope or relevant in purpose. The trial court found that the State obtained copies of all text messages sent to and received by Clampitt for a thirty-two day period, which included the date of the accident and the following thirty-one days.[6] The subpoenas did not request text messages Clampitt sent to or received from specific numbers; rather, the State obtained copies of all incoming and outgoing text messages, regardless of the recipient or sender. Furthermore, the Special Prosecutor testified that "[t]he period of time [specified in the subpoenas was] extended until such time as the defendant admitted that he was the driver of the vehicle." In other words, the State issued each consecutive subpoena because Clampitt made no admission within the time specified in the previous subpoena. If no evidence with which to charge Clampitt had come about, presumably the State would still be issuing subpoenas periodically in the hope of securing something it could use against him. The trial court found that the subpoenas were nothing but a fishing expedition, a finding amply supported by the record, and a practice uniformly recognized by the courts to be improper. Thus, even though the State contends the subpoenas were limited in scope because each subpoena requested text messages sent and received

---

**5.** We note that this statute, on its face, places no limits on what documents a prosecuting attorney can request and appears to provide no basis for the issuing judge to deny the request.

**6.** There is some confusion regarding the number of days of records that were sought and provided. The trial court's judgment found that the State received 32 days worth of text

messages (the date of the accident and the following 31 days). The State's brief suggests at one point that it only requested 14 days worth of text messages. But there is no disagreement that the State obtained some 300 pages of text messages. Moreover, the State does not bring a point on appeal challenging the trial court's finding that it sought and received the records for 32 days.

within specified dates, the only significance of those specified dates was that Clampitt had yet to admit he was the driver of the vehicle at the time of the accident. Therefore, by requesting all of Clampitt's incoming and outgoing text messages up until the time he came forward as the driver of the vehicle, the State failed to sufficiently limit the scope of information it requested in the investigative subpoenas.

■ Furthermore, the State had no relevant purpose for requesting Clampitt's incoming and outgoing text messages beyond the time of the accident. The trial court found that "the state was eavesdropping to see if the defendant would make an admission." By the Special Prosecutor's own testimony, the State sought the contents of Clampitt's text messages for the sole purpose of obtaining an admission from Clampitt as to who was driving the vehicle at the time of the accident. Requests for documentary evidence made pursuant to investigative subpoenas must be made in good faith, not as general fishing expeditions. *See United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974). The State provided no evidence that it had reason to believe Clampitt had made admissions or divulged any details about his role in the accident via text messages. Thus, without a more specific purpose, it is difficult to see how the search and seizure of Clampitt's incoming and outgoing text messages beyond the time of the accident was anything more than a fishing expedition for an admission from Clampitt, as the trial court found it to be. Thus, the trial court did not err in finding the investigative subpoenas to be an unreasonable search. Point two is denied

In its third point on appeal, the State asserts that even if obtaining the records of Clampitt's incoming and outgoing text messages violated Clampitt's Fourth Amendment rights, the trial court erred in suppressing the evidence because the prosecutor was acting in good faith when she obtained the contents of Clampitt's text messages by use of investigative subpoenas. "It is well settled that under the 'exclusionary rule,' the fruits of an unlawful search or seizure are inadmissible and cannot be used against a defendant at trial." *State v. Taber,* 73 S.W.3d 699, 707 (Mo.App. W.D.2002). The State avers, however, that the trial court should have foregone application of the exclusionary rule, as the prosecutor's reliance on the investigative subpoena statute triggers the good faith exception to the exclusionary rule set out in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

In *Leon,* the United States Supreme Court held that evidence obtained by police officers in objectively reasonable reliance on a subsequently invalidated search warrant should not be suppressed pursuant to the exclusionary rule. *Id.* at 922, 104 S.Ct. 3405. Since *Leon,* the Court has expanded the good faith exception to the following additional scenarios: (1) "warrantless administrative searches performed in good-faith reliance on a statute later declared unconstitutional"; (2) "police who reasonably relied on mistaken information in a court's database that an arrest warrant was outstanding"; (3) police mistakes that are the result of negligence as opposed to "systemic error or reckless disregard of constitutional requirements"; and (4) "searches conducted in objectively reasonable reliance on binding appellate precedent." *Herring v. United States,* 555 U.S. 135, 142, 147, 129 S.Ct. 695, 701, 704, 172 L.Ed.2d 496 (2009); *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 2423–24, 2428, 180 L.Ed.2d 285 (2011).

■ It is noteworthy that the good faith exception applies to police officers and police conduct. Here, the search in question was not carried out by police officers, nor was it pursuant to a subsequently invalidated search warrant. Likewise, the search was not made in reliance on a statute later found to be unconstitutional or binding appellate precedent, and it did not occur by virtue of negligent police mistakes. Rather, the search in this case was a conscious and considered decision made by the Special Prosecutor. The text messaging records were obtained through four investigative subpoenas, which the Special Prosecutor as much as admitted, and this court and the trial court have found, to be nothing more than a fishing expedition for an admission from Clampitt. Thus, the prosecution's actions do not fit within any of the recognized good faith exceptions to the exclusionary rule.

The State, nonetheless, relies on *United States v. Butz*, 982 F.2d 1378, 1382 (9th Cir.1993), for the proposition that the good faith exception can and should be applied to the actions of prosecutors as well as law enforcement officers. The *Butz* case, however, involved the actions of both law enforcement officers as well as a prosecutor and resulted from a warrantless search performed in good-faith reliance on a statute later deemed unconstitutional. *Id.* at 1382–83 (holding that the good faith exception to the exclusionary rule applied where police officers and a prosecutor relied on an Idaho statute, which allowed prosecutors to apply for pen registers without showing probable cause, that the Idaho Supreme Court later found to be unconstitutional). Although the State argues that the Special Prosecutor's reliance on the investigative subpoena statute parallels the prosecutor's reliance on the Idaho statute in *Butz*, this is not a case in which a prosecutor relied on a subsequently invali-dated statute. Rather, the prosecution here used four investigative subpoenas to violate Clampitt's Fourth Amendment right to privacy in order to obtain an admission. Thus, *Butz* is factually distinguishable from the present case.

Finally, the State asserts that the exclusionary rule should be applied only to deter police misconduct and, thus, should be the court's "last resort," not its "first impulse." *See Herring*, 555 U.S. at 140, 129 S.Ct. at 700. We observe first that the misconduct in this case was not police misconduct, but prosecution misconduct. If permitted in this case, it will likely be repeated and/or expanded in the next. More importantly, however, the evidence in this case was suppressed pursuant to Missouri statute, rather than the exclusionary rule. Section 542.296.1 authorizes one aggrieved by an unlawful seizure "to file a motion to suppress the use in evidence of the property or matter seized." Section 542.296.5 specifies the grounds upon which a motion to suppress may be based. One of those grounds is that "the search or seizure violated the rights of the movant under section 15 of article I of the Constitution of Missouri, or the fourth and fourteenth amendments of the Constitution of the United States." § 542.296.5(5). The trial court found that the search and seizure in this case violated those constitutional provisions. The record amply supports that decision. Consequently, the trial court did not err in granting the motion to suppress. Point three is denied.

The judgment of the trial court is affirmed.

All concur.